STEVEN CHESLEK, On Behalf of Himself
and All Others Similarly Situated,

        Plaintiff,

v.

ENCORE CAPITAL GROUP, INC., ASSET
ACCEPTANCE CAPITAL CORP aka ASSET
ACCEPTANCE, MIDLAND FUNDING,
LLC., KARLI ANNE PETERSON and
ELIZABETH M. SMITH, ANDREW PERRY,
STEPHANIE CARRINGTON PETTWAY,
and JANE and JOHN DOE NOTARIES (1-
10),

        Defendants.

Case No. 1:16-cv-01183

Hon. Janet T. Neff

| | |
|---|---|
| Brian P. Parker (P48617) | Robert M. Horwitz (P51466) |
| Brian P. Parker PC | Dykema Gossett PLLC |
| Attorney for Plaintiff | Attorney for Defendants |
| 2000 Town Ctr Ste 1900 | 400 Renaissance Ctr |
| Southfield, MI 48075-1152 | Detroit, MI 48243 |
| (248) 342-9583 | (313) 568-5384 |
| | |
| Nicholas A. Reyna (P68328) | Theodore W. Seitz (P60302) |
| Law Office of Nicholas Reyna PC | Kyle M. Asher (P80359) |
| Attorney for Plaintiff | Dykema Gossett PLLC |
| 528 Bridge St NW 1A | Attorneys for Defendants |
| Grand Rapids, MI 49504-5349 | 201 Townsend Street, Suite 900 |
| (616) 235-4444 | Lansing, MI 48933 |
| | (517) 374-9100 |

**DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS THE APPLICATION OF
_NEWMAN V. ENCORE CAPITAL GROUP, INC._**

## DEFENDANTS' SUPPLEMENTAL BRIEF

At this Court's direction (Dkt. 43), this brief address the application of the recent opinion in *Newman v. Encore Capital Grp., Inc.*, No. 2:16-cv-11395, Dkt. 39 (E.D. Mich. Aug. 14, 2017) (Leitman, J.) (Attached as Exhibit A). For the following reasons, *Newman* should be applied in this case to dismiss *all* of Cheslek's claims for lack of Article III standing.

In *Newman*, the court found that the only claims plaintiffs alleged that were fairly traceable to a concrete injury—and thus did not require dismissal for want of Article III standing—were those claims based on the allegation that affidavits attached to Midland's state court collection complaints were "fraudulently-notarized" or "robo-signed." The court reasoned that, given the specific facts before it, the "fraudulent-notarization" (if proven) caused a concrete harm for two reasons. *First*, under Michigan law, the notarization "shifted the burden" to the plaintiffs (the state court defendants) to respond with their own affidavits showing they were not indebted to Midland. The plaintiffs, however, testified (through declarations attached to the amended complaint) they could not meet this burden by filing an affidavit because "they did not know whether Midland had, in fact, purchased their debts," could not make a sworn statement one way or the other, and otherwise thought Midland "could prevail." *Newman*, Op. & Order at 7-9, 24. Thus, in *Newman*, the first concrete injury caused by the false-notarization (if proven) was the creation of a "burden of production [plaintiffs] could not carry." *Id.* And *second*, the court found that the false-notarization (if proven) caused the plaintiffs to engage in additional work by filing "a motion to strike the affidavits in order to prevent the entry of judgment against them." *Id.* at 24.

The only concrete injuries identified in *Newman*, however, are non-existent in this case. Even accepting as true under Rule 12(b)(6) that the affidavit was falsely-notarized, that false-

1

notarization would not have created a "burden of production [Plaintiff] *could not carry*." Unlike in *Newman*, where the plaintiffs could not submit affidavits because they thought Midland "could prevail" and did not know for certain whether Midland owned their debt, in this case, although he did not deny owing the debt in general, Cheslek was adamant that he did not owe the debt *to Midland*, stating that "when I received the lawsuit, I did not believe I owed Midland Funding this debt" and that "I knew I did not owe this debt to Midland and did not know who they were." (Cheslek Aff., Dkt. 5-14, PageID.455.) Because Cheslek believed he did not owe the debt to Midland when he received the lawsuit, nothing prevented him from filing the affidavit required by MCL § 600.2145 with his answer. And also unlike *Newman*, Cheslek did not engage in any extra work by filing a motion to strike the affidavits. Instead, like defendants in most cases, he filed only an answer in response to the collection complaint. (Dkt. 39-1.)

No other factual differences between this case and *Newman* compel a finding of standing. In response to Defendants' motion to transfer venue, Cheslek identified only two factual differences between his case and *Newman*: (1) the state court collection action against him was dismissed with prejudice, whereas in *Newman*, the complaints were dismissed without prejudice (Dkt. 18, PageID.743.); and (2) "the focus [in this case] is on the thousands of Affidavits without Ms. Peterson's signature but all signed on the 'second page,' rather than just Ms. Peterson as predominates in the *Newman* case. *Newman* focuses on Peterson. *Cheslek* focuses on the plan and scheme in support of collections lawsuits and subsequent Default Judgments under MCL 600.2145." (*Id.* at PageID.744.)

The dismissal of the state court collection complaint against Cheslek with prejudice actually strengthens a finding that Article III standing is lacking. In *Newman*, the court correctly interpreted the Supreme Court's decision in *Clapper v. Amnesty International*, 133 S. Ct. 1338

2

(2013), and rejected the plaintiffs' argument that they had standing because the defendants' collection actions caused a "risk" that they *could have* suffered a default judgment. The court's determination was based on the fact that "the risk-based standing inquiry is *forward* looking—at the time of suit, the plaintiff must face 'a substantial risk that the harm *will* occur.'" *Newman*, Op. & Order at 18. Because the plaintiffs' "secured a dismissal" of the collection action, they did not allege that they "continue[d] to face the risk of default judgment[.]" The same is true here. Indeed, that Cheslek's state court complaint was dismissed *with prejudice* conclusively shows that he cannot face a default judgment as a result of the complained-of conduct. Thus, Cheslek cannot rest on this "risk of harm" theory to establish standing.

Cheslek's focus on "the thousands of Affidavits" that were allegedly robo-signed "without Ms. Peterson's signature but all signed on the 'second page' rather than just Ms. Peterson as predominates in the *Newman* case," is immaterial. Critically, the affidavit attached to Cheslek's state court complaint (Dkt. 5-8, PageID.322) was not among the "thousands of Affidavits" without Ms. Peterson's signature. As with the affidavits in *Newman*, Cheslek's affidavit contained the notary stamp and (allegedly false) signature of Ms. Peterson. (*Id.*) The court in *Newman* correctly recognized that it is the injury suffered by the named plaintiff that matters to determine whether the named plaintiff has Article III standing. And that alleged injury—receiving an allegedly falsely-notarized signature *bearing Karli Anne Peterson's name*—is the same in this case as it was in *Newman*.

Moreover, that Cheslek, unlike the plaintiffs in *Newman*, alleged "[a]ctual damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to a false debt collection lawsuit under MCL 600.2145" (Am. Compl. ¶ 113d (sic), PageID.282), does not warrant a finding of standing. As *Newman* recognized, a plaintiff "must demonstrate

3

that her concrete injury is 'fairly traceable to the challenged action of the defendant.'" *Newman*, Op. & Order at 25 (citation omitted). Put differently, the allegation of a single concrete injury "does not automatically grant [a plaintiff] Article III standing to challenge *all of Defendants' collection practices* that are identified in the Amended Complaint." *Id.* (emphasis added). If that were the case, a plaintiff could allege a complaint-full of statutory violations that did not cause a concrete injury, so long as one count in the complaint did allegedly cause a concrete injury. That is not so. Each alleged statutory violation must be fairly traceable to a concrete injury.

The court in *Newman* correctly applied this standing principle to dismiss all the FDCPA claims based on Defendants' collection practices that were not fairly traceable to the concrete injury that was alleged, *id.* at 25-26, and this Court should do the same. The same analysis regarding the inability of a general allegation about actual damages to establish standing for all claims applies in this case. Cheslek's bare allegations of "stress" and "out of pocket expenses" do not automatically provide him with Article III standing for every alleged FDCPA violation based on every allegedly wrongful collection practice. This Court must examine each alleged violation to determine whether that violation is fairly traceable to a concrete injury. Here, the alleged wrongful collection practices are not "fairly traceable" to a concrete injury, including that of "stress" or "out of pocket expenses." Although Cheslek does not allege what caused the stress or out of pocket expenses, it is implausible that any heightened "stress" or "expenses" resulted from: "Defendants' labeling the Collection Complaints as 'Verified'; Defendants' use of case captions and words 'the obligation sued upon' in the Ownership and Delinquency Affidavits; Defendant Attorneys' failure to meaningfully review the substance of the Collection Complaints prior to signing those complaints; Defendants' failure to attach documents to the Collection Complaint proving the underlying obligation; and Defendants' use of the collection practices to

4

secure default judgments from Michigan consumers and to collect debt that Midland does not own." *Newman*, Op. & Order at 26.

Finally, the remainder of the *Newman* court's legal analysis was correct, and supports the arguments made in Defendants' Motion to Dismiss in this case. In *Newman*, the court accepted the following arguments, all of which Defendants raised in this case: plaintiffs' citation to cases relying on *Church* was misplaced because the Sixth Circuit has rejected *Church*'s analysis, *Newman*, Op. & Order at 15; that there is no case law supporting the argument that the "failure to maintain adequate procedures to prevent violations of the FDCPA and MRCPA, itself, cause[s] a concrete injury sufficient to confer standing," *id.* at 19; that injuries potentially suffered by putative class members, but not by plaintiffs themselves, are immaterial to whether plaintiffs have standing, *id.* at 20-21; and that defendants who have no involvement in the alleged statutory violations must be dismissed, *id.* at 41-42.

For these reasons, and those mentioned in prior briefs filed in support of Defendants' Motion, Defendants request dismissal of the Amended Complaint, in its entirety.

Respectfully submitted,

Dated: September 15, 2017 **DYKEMA GOSSETT PLLC**

By: */s/ Theodore W. Seitz*
Theodore W. Seitz (P60302)
Robert M. Horwitz (P51466)
Kyle M. Asher (P80359)
Attorneys for Defendants
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9137

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

*/s/ Theodore W. Seitz*
Theodore W. Seitz (P60302)
Robert M. Horwitz (P51466)
Kyle M. Asher (P80359)
Attorneys for Defendants
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9137

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933